David E. MOORE, an individual, Plaintiff–Appellee,

v.

SUN BANK OF NORTH FLORIDA, N.A. a Florida corporation, Defendant–Appellant.

No. 88–4018.

United States Court of Appeals, Eleventh Circuit.

Jan. 25, 1991.

Susan G. Sparks, J. Thomas Kilpatrick, Smith, Currie & Hancock, Atlanta, Ga., for defendant-appellant.

Miriam R. Eisenstein, Acting Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for amicus curiae.

S. Grier Wells, W. Scott Cole, Brant, Moore, Sapp, MacDonald & Wells, P.A., Jacksonville, Fla., for plaintiff-appellee.

M. David Gelfand, Terry E. Allbritton, Appellate Advocacy Program, Tulane Law School, New Orleans, La., for amicus curiae.

Before HATCHETT and CLARK, Circuit Judges, and HILL, Senior Circuit Judge.

CLARK, Circuit Judge:

This case presents the question whether a national bank's participation in the Small Business Administration's (SBA) guaranteed loan program constitutes receipt by the bank of federal financial assistance pursuant to Section 504 of the federal Rehabilitation Act.[1] The district court, relying upon distinctions between provisions in the Rehabilitation Act and other legislation governing remedies for anti-discrimination and upon cases in this circuit interpreting aspects of the Rehabilitation Act, held that appellant, Sun Bank, was "covered" by the Act and liable for employment discrimination against a handicapped person. We affirm.

## FACTS

In July, 1987, appellee, David E. Moore, filed a complaint seeking relief under section 504 of the Rehabilitation Act.[2] Appellee contends that after being hospitalized for surgery and treatment of a brain tumor, he was, after returning to work, subjected to a continual reduction in authority and responsibility by appellant, Sun Bank, and was eventually terminated by appellant. In his complaint, he claims that ap-

---

1. 29 U.S.C. § 794.

2. Subsequent to the filing of this action, Congress enacted the Americans with Disabilities Act of 1990, Pub.L. 101–336, 104 Stat. 327 (1990), the purpose of which is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Pub.L. 101–336, 104 Stat. 329, § 2(b)(1). Title I of the Act contains a general prohibition of discrimination against handicapped persons in the terms and condi-

tions of their employment. *Id.,* Sec. 102(a). The prohibition applies to employers of 25 or more employees within industries affecting commerce. *Id.,* Sec. 101(5). Section 501(b) makes clear that Congress did not intend the Americans with Disabilities Act to effect a change in the breadth of enforcement under the Rehabilitation Act or any other federal, state, or local law protecting the rights of handicapped individuals. The Act becomes effective two years after the date of enactment, July 26, 1990. *Id.,* Sec. 108.

pellant violated section 504 when it limited his authority and eventually fired him solely because of his handicap, cancer. Appellee also states a pendent state law claim for intentional infliction of emotional distress.

> Section 504 provides in pertinent part: No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....[3]

Is Sun Bank's participation in the Small Business Administration's guaranteed loan program a "program or activity receiving Federal financial assistance"?

The SBA is a federal agency that operates pursuant to the direction of the President.[4] Congress appropriates funds from the United States Treasury to be used to guarantee up to ninety percent of the loans made by lending institutions participating in the SBA's program. Thus, the purpose of the program is to allow lending institutions to make loans to small businesses with virtually no risk of loss.[5] Through this program, Sun Bank provided loans to small businesses and, on at least one occasion during appellee's employment, received a direct reimbursement from the SBA following the default of a guaranteed loan. Participation by banks in the guaranteed loan program is voluntary.

### STATUTORY BACKGROUND

■ Appellant Sun Bank argues that its participation in the SBA guaranteed loan program does not subject it to coverage under Section 504 of the Rehabilitation Act because contracts of insurance or guaranty are excluded from the definition of federal financial assistance. In light of the fact that the Act previously set forth verbatim does not exclude such contracts of insurance or guaranty from the meaning of Fed-

eral financial assistance, appellant's argument necessarily relies upon inferring from other sources congressional intent to do so.

At the risk of unduly lengthening this opinion, we begin our consideration of this issue with a brief overview of several antidiscrimination statutes enacted in 1964 and since. The first major legislation was the Civil Rights Act of 1964 which included prohibitions against discrimination in voting practices (Title I), prohibitions against employment discrimination (Title VII), nondiscrimination in federally assisted programs (Title VI), and others. We focus here on Title VI because appellant urges us to incorporate part of that title into the Rehabilitation Act. The applicable language is as follows:

> Sec. 601. No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
>
> Sec. 602. Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract *other than a contract of insurance or guaranty,* is authorized and directed to effectuate the provisions of section 601....[6]

In an amendment to the Higher Education Act of 1965, Congress in 1972 enacted Title IX to prohibit sex discrimination. The comparable provisions are as follows:

> Sec. 901. (a) No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....
>
> Sec. 902. Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity, by way of grant, loan, or contract *other than a*

---

**3.** 29 U.S.C. § 794.

**4.** 15 U.S.C. § 633.

**5.** *See* § 15 U.S.C. 631(a), 636(a).

**6.** Pub.L. 88–352, Title VI, § 601, 78 Stat. 252 (1964) (current version at 42 U.S.C. §§ 2000d, 2000d–1) (emphasis added).

*contract of insurance or guaranty*, is authorized and directed to effectuate the provisions of Section 902.... [7]

In the same title, Congress prohibited discrimination against the blind in programs receiving Federal financial assistance:

Sec. 904. No person in the United States shall, on the ground of blindness or severely impaired vision, be denied admission in any course of study by a recipient of Federal financial assistance for any education program or activity....

Sec. 905. Nothing in this title shall add to or detract from any existing authority with respect to any program or activity under which Federal financial assistance is extended *by way of a contract of insurance or guaranty*. [8]

In 1975, Congress prohibited age discrimination in the following legislation:

Sec. 303. Pursuant to regulations prescribed under section 304, and except as provided by section 304(b) and section 304(c), no person in the United States shall, on the basis of age, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance.

Section 304(a).

\* \* \* \* \* \*

(4) ... [T]he head of each Federal department or agency which extends Fed-

eral financial assistance to any program or activity by way of grant, entitlement, loan, or contract *other than a contract of insurance or guaranty*, shall transmit to the Secretary.... [9]

Each of these statutes excluded recipients of federal financial assistance who receive benefits from contracts of insurance or guaranty. Our research has disclosed no statute, rule, or decisional law that has defined "contract of insurance or guaranty."

The Vocational Rehabilitation Act was amended in 1973 in many respects, including a prohibition of discrimination against the handicapped. The statute, as originally enacted, provided as follows:

Sec. 504. No otherwise qualified handicapped individual in the United States, as defined in section 7(6), shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. [10]

Congress, in this legislation, did not include any section comparable to section 602 of Title VI, section 902 or 905 of Title IX, or section 304(a)(4) of the Age Discrimination Act.

Realizing that the 1973 statute, *i.e.*, section 504, failed to provide any enforcement mechanism, Congress in 1978 amended section 504 by adding language as reflected in the note below. [11] Additionally, Congress

---

**7.** Pub.L. 92–318, Title IX, § 901, 902, 86 Stat. 373, 374 (1972) (current version at 20 U.S.C. §§ 1681, 1682) (emphasis added).

**8.** Pub.L. 92–318, Title IX, § 904, 905, 86 Stat. 375 (1972) (current version at 20 U.S.C. §§ 1684, 1685) (emphasis added).

**9.** Pub.L. 94–135, Title III, § 303, 304, 89 Stat. 728 (1975) (current version at 42 U.S.C. §§ 6102, 6103) (emphasis added).

**10.** Pub.L. 93–112, Title V, § 504, 87 Stat. 394 (1973) (applicable version, including 1986 amendments, at 29 U.S.C. 794 (West Supp. 1990)).

**11.** 29 U.S.C. § 794 (1978) reads as follows:
No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the partic-

ipation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

A 1986 amendment to the Act made only technical changes. *See* Pub.L. 99–506, Title I, § 103(d)(2)(B), Title X, § 1002(e)(4), 100 Stat. 1810 (1986). The current version of section

enacted section 505(a)(2), on which appellant Sun Bank relies in urging that Congress included in the Rehabilitation Act a provision that excluded contracts of insurance or guaranty. Section 505(a)(2) provides in pertinent part:

(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 504 of this Act.[12]

We cannot accept the contention that the "remedies, procedures, and rights" language in section 505(a)(2) incorporated the language of section 602 of Title VI (42 U.S.C. 2000d–1), excluding "a contract of insurance or guaranty" from the definition of Federal financial assistance.

Appellant argues in its brief:

Contracts of insurance of guaranty are also excluded from the definition of federal financial assistance by specific Congressional action. In 1978, Congress amended Section 504 to incorporate the "remedies, procedures and rights" of Title VI. 29 U.S.C.A. Section 794a(a)(2) (West 1985 & Supp.1988). Title VI, like other anti-discrimination legislation, contains an express exclusion of contracts of insurance or guaranty within a procedural provision of the statute. Therefore, under the 1978 amendment, the language excluding contracts of insurance or guaranty is incorporated within Section 504 of the Rehabilitation Act. Moreover, the legislative history of the 1978 amendments demonstrates that the regulation excluding contracts of insurance or guaranty was meant to be codified as specific statutory practice.[13]

First, it is clear that the Rehabilitation Act does not, on its face, exclude contracts of insurance or guaranty. Further, we have carefully studied the legislative history of the 1978 amendments and find nothing to support appellant's contention that incorporation of the phrase "remedies, procedures, and rights" found in the legislative history was intended to include the limitations contained in Title VI (section 602). Appellant Sun Bank makes the foregoing argument based upon the following statement from Senate Report No. 95–890 dated May 15, 1978:

Subsection (a)(2) of the new section makes available the remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 to any person aggrieved by any act or failure to act by any recipient of Federal assistance or any Federal provider of Federal assistance under section 504 of the Rehabilitation Act of 1973.

It is the committee's understanding that the regulations promulgated by the Department of Health, Education, and Welfare with respect to procedures, remedies, and rights under section 504 conform with those promulgated under title VI. Thus, this amendment codifies existing practice as a specific statutory requirement.

Our rejection of appellant's argument is based upon the proposition that Congress in 1964 (Title VI), in 1972 (Title IX), and in 1975 (Age) enacted statutes prohibiting discrimination in programs receiving federal financial assistance and each time expressly excluded contracts of insurance and guaranty. During this same era, Congress, in 1973 and 1978, passed legislation affecting the handicapped and did not exclude such contracts. Appellant asks us to insert language in the Act that Congress failed to include. This we are not empowered to do.

As this court reasoned in *Arline v. School Board*,[14] we would be "acting beyond our authority to read into section 504 limitations which Congress chose not to

504, including amendments not relevant here, appears at 29 U.S.C.A. § 794(a)–(c) (West Supp. 1990).

12. Pub.L. 93–112, Title V, § 505, as added Pub.L. 95–602, Title I, § 120, 92 Stat. 2982 (1978) (current version at 29 U.S.C. § 794a(a)2) (1978).

13. Appellant's Brief at 4–5.

14. 772 F.2d 759 (11th Cir.1985), *aff'd,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).

establish when it clearly could have done so."[15] The question, in *Arline*, was whether "Federal financial assistance" in section 504 included impact aid. We reasoned that "since impact aid does not fall within any specifically delineated exception to the statute, it must be defined as 'federal financial assistance' in order to give effect to the broad legislative intent expressed in section 504."[16]

Support for our position is found in *Consolidated Rail Corp. v. Darrone*.[17] In that case, the district court had relied upon *Trageser v. Libbie Rehabilitation Center, Inc.*,[18] which had held that section 505(a)(2) of the Rehabilitation Act incorporated into that Act the limitation found in section 604 of Title VI. This is the same argument made by Sun Bank, except that the limitation urged here is found in section 602, rather than section 604, of Title VI. The Supreme Court in *Consolidated Rail* rejected this argument, reasoning:

It is clear that § 504 itself contains no such limitation. Section 504 neither refers explicitly to § 604 nor contains analogous limiting language; rather, that section prohibits discrimination against the handicapped under "any program or activity receiving Federal financial assistance." And it is unquestionable that the section was intended to reach employment discrimination. Indeed, enhancing employment of the handicapped was so much the focus of the 1973 legislation that Congress the next year felt it necessary to amend the statute to clarify whether § 504 was intended to prohibit other types of discrimination as well....[19]

The Court further stated that

language as broad as that of § 504 cannot be read in isolation from its history

and purposes.... In these respects, § 504 differs from Title VI in ways that suggest that § 504 cannot sensibly be interpreted to ban employment discrimination only in programs that receive federal aid the "primary objective" of which is to promote employment....

In contrast, the primary goal of the Act is to increase employment of the handicapped, *see supra*, at 1253 and n. 12. However, Congress chose to ban employment discrimination against the handicapped, not by all employers, but only by the Federal Government and recipients of federal contracts and grants. As to the latter, Congress apparently determined that it would require contractors and grantees to bear the costs of providing employment for the handicapped as a *quid pro quo* for the receipt of federal funds. *Cf.* 118 Cong.Rec. 32305 (1972) (remarks of Sen. Javits). But this decision to limit § 504 to the recipients of federal aid does not require us to limit that section still further, as petitioner urges.[20]

The district court in denying relief to Sun Bank relied heavily upon *Jones v. Metropolitan Atlanta Rapid Transit Authority*.[21] That decision presented the same issue and factual pattern as *Consolidated Rail* and presaged the outcome of that case. The following comments from our earlier opinion are relevant to our decision and guide our thinking:

Section 504 of the Rehabilitation Act specifically prohibits discrimination against qualified handicapped people in "any program or activity receiving Federal [financial] assistance...." 29 U.S.C.A. § 794. On its fact, therefore, the

---

**15.** *Id.* at 762 n. 8.

**16.** *Id.* at 763 n. 9. *See also Richerson v. Jones,* 551 F.2d 918, 928 (3d Cir.1977) (quoting *General Electric Co. v. Southern Constr. Co.,* 383 F.2d 135, 138 n. 4 (5th Cir.1967)) ("Where a statute with respect to one subject contains a given provision, the omission of such a provision from a similar statute is significant to show a different intention existed.").

**17.** 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984).

**18.** 590 F.2d 87 (4th Cir.1978), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979).

**19.** 465 U.S. at 632, 104 S.Ct. at 1253 (footnote and citations omitted).

**20.** *Id.* at 632 n. 13, 104 S.Ct. at 1253–54 n. 13.

**21.** 681 F.2d 1376 (11th Cir.1982), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

Section applies to programs receiving federal financial aid of any kind.

\* \* \* \* \* \*

In 1978, Congress again amended the Rehabilitation Act and added Section 505, Pub.L.No. 95–602, 92 Stat. 2955 (1978). The section provides that the "remedies, procedures, and rights" of an aggrieved party are found in title VI of the Civil Rights Act of 1964. Significantly, Congress did not simply state that suits under Section 504 of the Rehabilitation Act were controlled by Title VI. Instead, Congress made clear that only the "remedies, procedures, and rights" of Title VI were incorporated into the Rehabilitation Act. Section 604, as a substantive restriction on standing, does not constitute a right, remedy or procedure. Thus, under the plain meaning of the language in Section 505, Section 604 of the Civil Rights Act was not incorporated into the Rehabilitation Act.

\* \* \* \* \* \*

More specifically, the Conference Report to the 1978 Amendments acknowledges that the Rehabilitation Act extends to any recipient of federal financial assistance. H.Con.R. No. 1780, 95th Cong., 2d Sess. (1978), reprinted in U.S.Code Cong. & Ad. News 7375, 7404 (Section 505 insures that the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 would be available to any person aggrieved by any act or failure to act by *any recipient of Federal assistance....*") (emphasis added). Furthermore, the discussion of Section 505 in the Conference Report was located in a subsection titled "Attorneys' Fees and Remedies." The title of an act or subsection can be used to help interpret an ambiguous statute. *Russ v. Wilkins,* 624 F.2d 914, 911 (9th Cir.1980). It is reasonable to conclude that the title of this subsection indicates that Congress was adopting the section to provide benefits and remedies for an aggrieved party.

On the other hand the restrictions found in Section 604 cannot be construed as either a benefit or a remedy.[22]

The court in *Jones* recognized that the 1978 amendments to the Rehabilitation Act, by incorporating the remedies, rights, and procedures of Title VI, "intended to *expand* rather than contract the applicability of the Rehabilitation Act."[23] As Senator Stafford explained, the 1978 amendments to the Rehabilitation Act allow "the rehabilitation program to grow and serve more handicapped individuals and provide these individuals with greater opportunities to maximize their potential."[24] And, although Title VI and section 504 are similar in language and purpose, we must give effect to their differences.[25]

Neither the legislative history nor incorporation of the rights, remedies, or procedures of Title VI recognize such a limitation on the rights of the disabled to be free of discrimination in the terms of their employment. Therefore, absent evidence of congressional intent to limit the meaning of federal financial assistance in section 504, particularly given evidence of congressional awareness of the potential scope of that language, we must conclude that Congress intended section 504 to apply broadly to institutions receiving federal financial assistance.

## ADMINISTRATIVE REGULATIONS

■ Appellant also argues that this court should defer to regulations promulgated by Health, Education, and Welfare (HEW), which exclude contracts of insurance or guaranty from the definition of "Federal financial assistance." 45 C.F.R. § 84.3(h) provides in pertinent part that " 'Federal financial assistance' means any grant, loan, [or] contract (other than a procurement contract or a contract of insurance or guaranty)...." Inclusion of the limitation on federal financial assistance

---

22. 681 F.2d at 1379–81.

23. *Id.* at 1381 n. 13.

24. 124 Cong. Rec. S30311 (daily ed. Sept. 20, 1978).

25. *See North Haven Board of Educ. v. Bell,* 456 U.S. 512, 530, 102 S.Ct. 1912, 1922, 72 L.Ed.2d 299 (1982) ("For although two statutes may be similar in language and objective, we must not fail to give effect to the differences between them.").

within the agency regulations distinguishes this case from *Jones* and *Consolidated Rail Corp.*, in which the regulatory provisions in question, consistent with the language of the statute and with legislative intent, called for a broad reading of "Federal financial assistance." However, because we find HEW's application of section 504, insofar as it pertains to the insurance or guaranty contract exclusion, to be inconsistent with congressional intent, we decline to accept the agency's interpretation.

In 1977, the President designated HEW as the agency responsible for coordination and implementation of section 504.[26] On January 13, 1978, the final regulations contemplated by the Executive Order were published by the Department. These regulations contained the exclusion for guaranty or insurance contracts.[27] In the comments accompanying these final regulations, HEW noted that it had retained the exclusion issued in the proposed regulations, despite criticism that "programs whose only federal assistance is in the form of federal loan guarantees, such as [FDIC] and [FHA] programs," would be exempt from the statute.[28]

The agency's reason for retaining the exclusion under section 504 is significant. Critics of the regulations argued that because section 504, unlike Title VI and Title IX, contained no statutory exemption for contracts of insurance or guaranty, exclusion of such contracts in the regulations implementing section 504 would be inconsistent with congressional intent. To this, the agency responded,

> There is no indication, however, in the legislative history of the Rehabilitation Act of 1973 or of the amendments to that

Act in 1974, that Congress intended section 504 to have a broader application, in terms of Federal financial assistance, than other civil rights statutes. Indeed, Congress directed that section 504 be implemented in the same manner as titles VI and IX. In view of the long established exemption of contracts of insurance or guaranty under title VI, we think it unlikely that Congress intended section 504 to apply to such contracts.[29]

While it is true that courts generally give deference to the interpretation given a statute by the agency charged with its administration,[30] "[t]he traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress."[31] We have noted, above, that the intent of Congress is clear from the plain meaning of the statute.

Even if, as appellants argue, congressional intent has not been "unambiguously expressed,"[32] we still must ask whether the agency regulations are a "reasonable interpretation"[33] of the intent of Congress. As the Court in *Chevron* explained,

> If . . . the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.[34]

The agency, in implementing the statute, relies on the absence of specific legislative history regarding the insurance or guaran-

---

**26.** Executive Order 11914.

**27.** *See* 45 C.F.R. § 84.3(h).

**28.** 43 Fed.Reg. 2432. On November 2, 1980, the President transferred authority for coordinating section 504 from HEW, then the Department of Health and Human Services, to the Department of Justice (DOJ). On August 11, 1981, the DOJ adopted the HEW rules without change. 46 Fed.Reg. 40686. The current version of the regulations is found at 28 C.F.R. § 41.3(e).

**29.** 45 C.F.R. § 84, Appendix A, subpart a (comments on 45 C.F.R. § 84.3(h)).

**30.** *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2780, 81 L.Ed.2d 694 (1984).

**31.** *Board of Governors, FRS v. Dimension Financial Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986).

**32.** *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781.

**33.** *Id.* at 844, 104 S.Ct. at 2782.

**34.** *Id.* at 843, 104 S.Ct. at 2781–82.

ty contract exclusion and on section 504's incorporation of the "remedies, procedures, and rights" set forth in Title VI. However, as set forth above, the plain language of section 504, the failure of Congress to amend the Rehabilitation Act to exclude contracts of insurance or guaranty, and the clearly expressed intent of Congress in providing broad remedy for handicapped discrimination in programs receiving "Federal financial assistance" belie such an interpretation. We conclude, as did the Supreme Court in *Consolidated Rail Corp.*, that "it would be anomalous to conclude that the section 'designed to enhance the ability of handicapped individuals to assure compliance with [§ 504], ... *silently adopted a drastic limitation on the handicapped individual's right to sue federal grant recipients for employment discrimination.*"

Finally, we note that pursuant to Department of Justice regulations, each agency is to promulgate regulations defining, among other terms, the meaning of Federal financial assistance.[35] Although the regulations promulgated by the individual agencies cannot utilize definitions inconsistent with the Justice Department's coordinating regulations,[36] the regulations promulgated by the Small Business Administration, in fact, contain no insurance/guaranty contract exclusion. They define federal financial assistance to include "grants and loans of Federal funds," the "grant or donation of Federal property and interest in property," and the "detail of Federal personnel." 13 C.F.R. § 113.2(a). In separately defining federal financial assistance under Title VI, the SBA regulations promulgated pursuant to that title, consistent with the language of the statute, exclude contracts of insurance or guaranty from the definition of financial assistance.[37] We find that the SBA's implementation of section 504 and Title VI, as it pertains to the inclusion or exclusion of insurance or contracts within

the meaning of "Federal financial assistance," is consistent with the distinct language of each of these statutes and with statutory intent.

On the other hand, the regulations promulgated by the Department of Health, Education, and Welfare, and subsequently adopted by the Department of Justice, significantly depart from congressional intent with respect to the guaranty/insurance contract exclusion. Therefore, for the reasons stated above, we hold that those regulations are invalid with respect to that portion excluding programs receiving federal financial assistance in the form of contracts of insurance or guaranty from section 504 coverage.

## APPELLANT AS "RECIPIENT" OF FEDERAL FINANCIAL ASSISTANCE

■ Having found that contracts of insurance or guaranty constitute federal financial assistance within the meaning of section 504, we now must determine whether Sun Bank, as a participant in the SBA guaranteed loan program, is a "recipient" of federal funds. The district court held that Sun Bank received federal assistance because, in the event that a small business defaults on a guaranteed loan, the SBA directly reimburses Sun Bank. We agree.

By its terms, the scope of section 504 is limited to the "program or activity" that "receiv[es] federal financial assistance." The Supreme Court, in *United States Dept. of Trans. v. Paralyzed Veterans of America*,[38] held that section 504 protection is triggered only by "receipt" of, and not "benefit" from, federal aid.[39] Appellant argues that receipt of profits from SBA guaranteed loans does not subject Sun Bank to coverage under section 504 of the Rehabilitation Act, as Sun Bank is a mere beneficiary of federal funds, not a recipient. The "recipient" under the underlying grant statute, Aid to Small Businesses,[40]

**35.** 28 C.F.R. § 41.4(c)(1) (1990).

**36.** *Id.*

**37.** 13 C.F.R. § 112.2(c).

**38.** 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986).

**39.** *Id.* at 604, 106 S.Ct. at 2710.

**40.** 15 U.S.C.A. § 631 *et seq.* (West 1976 & Supp. 1988).

appellant contends, is the small business. This follows from the purpose of that Act, which is to "aid and assist small business concerns." [41] Nowhere, Sun Bank continues, does the statute refer to any form of assistance to financial institutions such as Sun Bank.

Contrary to appellant's contention, under the terms of the underlying grant statute, federal funds are directly reimbursed to the lending institution under the SBA guaranteed loan program upon default by the borrower. Indeed, while appellee was employed by Sun Bank, reimbursement, as we have noted, was made directly to the bank through the SBA fund.[42] The lender, as recipient of federal financial assistance, is willing to make what otherwise might be a high risk loan. Thus, funds appropriated by Congress under the terms of the Act are disbursed, upon default, to the bank.[43]

Moreover, under the rationale in *Grove City College v. Bell,*[44] should the bank choose not to bear the costs of providing employment for the handicapped as a *quid quo pro* for the receipt of federal funds, it is free to terminate its participation in the guaranteed loan program. "Congress enters into an arrangement in the nature of a contract with the recipient of the funds: the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision." [45] Congress thus has imposed the obligation of section 504 upon Sun Bank as a "recipient" who is "in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds." [46]

## CONCLUSION

After careful review of this issue, we remain unconvinced that Congress intended to incorporate into section 504 of the Rehabilitation Act the restrictive meaning of federal financial assistance urged on us by appellant Sun Bank. Likewise, because the regulations promulgated by HEW, in incorporating the insurance or guaranty contract exclusion within section 504, are based on an impermissible construction of section 504, we decline to follow them.

In reaching this decision, we give effect to the plain meaning of section 504 and the remedial purpose of the Act as embodied in the legislative history. The exclusion of contracts of insurance or guaranty from the meaning of federal financial assistance is a substantive limitation, not embraced within that term by incorporation through section 505 of the Rehabilitation Act of the "remedies, procedures, and rights" of Title VI. Thus, while we acknowledge that Con-

---

**41.** *Id.* at § 631(b).

**42.** *Cf. Paralyzed Veterans,* 477 U.S. at 605, 106 S.Ct. at 2711 ("Congress has made it explicitly clear that these funds are to go to airport operators. Not a single penny of the money is given to the airlines. Thus, the recipient for purposes of § 504 is the *operator* of the airport and not its users.").

**43.** Appellant improperly relies on *Paralyzed Veterans* in support of its argument that it is not a recipient of federal funds. In concluding that Sun Bank is only a beneficiary of federal assistance under the Small Business Act, appellant considers only Sun Bank's receipt of interest and profits from disbursement of loans to small businesses by the bank and, on this basis, concludes that it is a mere beneficiary. *See Paralyzed Veterans,* 477 U.S. at 606–07, 106 S.Ct. at 2711–12 ("While Grove City stands for the proposition that Title IX coverage extends to Congress' intended recipient, whether receiving the aid directly or indirectly, it does not stand for the proposition that federal coverage follows the aid past the recipients to those who merely benefit from the aid."). Because Sun Bank obtains federal funds through default reimburse-

ments made directly to the bank from Treasury monies, we have no trouble concluding that Sun Bank receives federal financial assistance and is, therefore, subject to the provisions of section 504. "The recipient is the intermediary entity whose nondiscriminatory participation in the federally assisted program is essential to the provision of benefits to the identified class which the federal [grant] statute is designed to serve." *See Bob Jones University v. Johnson,* 396 F.Supp. 597, 601 n. 15 (D.S.C.1974), *aff'd mem.,* 529 F.2d 514 (4th Cir.1975).

"In reaching this conclusion, we need not address whether Sun Bank, by receiving interest and profits earned on SBA loans which it would not otherwise earn, is an indirect recipient, rather than a mere beneficiary, of Federal Financial Assistance."

**44.** 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984).

**45.** *Paralyzed Veterans,* 477 U.S. at 605, 106 S.Ct. at 2711.

**46.** *Id.* at 606, 106 S.Ct. at 2711.

gress "patterned" section 504 after Title VI and Title IX, we agree with this court's prior understanding, in *Jones v. Metropolitan Atlanta Rapid Transit Authority,* of this oblique reference; section 504 was written with the same "sweeping language" [47] as Title VI. "However, the reference does not indicate an intent to incorporate the strictures of Title VI into the Rehabilitation Act." [48] We, therefore, give effect to the differences in scope of these sections, and Congress's reasons for those differences, in defining "Federal financial assistance."

Sun Bank, through participation in the SBA's guaranteed loan program, is a "program or activity receiving Federal financial assistance" and is thereby amenable to suit under section 504. We, therefore, AFFIRM the decision of the district court denying appellant's motion for summary judgment. In so concluding, we express no opinion as to the merits of appellee's claim.

AFFIRMED.

HILL, Senior Circuit Judge, dissenting:

In my view, (and as the appellants note), Section 504 of the federal Rehabilitation Act, 29 U.S.C. § 794, represents yet another instance where congressional intent has not been "unambiguously expressed." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). I, of course, sympathize with the majority's concern that we avoid inserting exclusionary language in a statute when elected lawmakers failed to do so. Nonetheless, *my* review of Senate Report No. 95–890, (May 15, 1978), convinces me that Congress did indeed intend for the limitations governing financial assistance in Section 602 of Title VI, 29 U.S.C. § 794a(a)(2) to apply to the assistance specified in the Rehabilitation Act as well.

The Senate Report states as follows:

Subsection (a)(2) of the new section makes available the remedies, proce-

dures, and rights set forth in title VI of the Civil Rights Act of 1964 to any person aggrieved by any act or failure to act by any recipient of federal assistance under Section 504 of the Rehabilitation Act of 1973.

It is the committee's understanding that the regulations promulgated by the Department of Health, Education and Welfare with respect to procedures, remedies, and rights under Section 504 conform with those promulgated under title VI. Thus, this amendment codifies existing practice as a specific statutory requirement.

A. *Exclusionary Language in Title VI.*

The Senate Report, in my view, at least, specifically adopts the limitations on federal financial assistance detailed in Section 602 of Title VI. The majority's opinion, however, emphasizes that in *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 635, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984), the Supreme Court rejected a litigant's argument that "Congress intend[ed] to enact the 'primary objective' requirement of § 604 [of Title VI] into the Rehabilitation Act when it amended that Act in 1978." The majority reasons that since the Supreme Court elected not to incorporate Title VI's Section 604 into the Rehabilitation Act, it would similarly elect not to incorporate Title VI's Section 602.

Section 604 of Title VI authorizes no action under the title "except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d–3. As I see it, the Supreme Court in *Consolidated Rail* simply found it "unnecessary to extend Title VI more generally to ban employment discrimination, as Title VII comprehensively regulates such discrimination." *Consolidated Rail,* 465 U.S. at 632, n. 13, 104 S.Ct. at 1253 n. 13. No such rationale, however, supports the majority's decision in this case. The exclusionary language at issue here would *limit*

**47.** *Jones,* 681 F.2d at 1379.  **48.** *Id.*

Section 504; it would not as in the *Consolidated Rail* case, expand its language into areas already duplicated by other statutes. In my view, the Senate Report plainly supports our incorporation of Title VI's exclusionary language into Section 504, and nowhere suggests that we limit its incorporation to selected segments of the statute.

### B.  *Administrative Regulations.*

I agree with the majority that an agency's interpretation of a statute need not necessarily reflect congressional intent.  In my view, however, the language of the Senate Report actually endorses "the regulations promulgated by the Department of Health, Education and Welfare."[1]  As the Report makes plain, the regulations, at least "with respect to procedures, remedies and rights under Section 504[,] *conform* with those promulgated under Title VI." (emphasis supplied).  The Report, in short, accepts the regulations as a legitimate and appropriate source of authority in their interpretation of Section 504, and I see no reason why we should disregard that authority now.

### CONCLUSION

For these reasons, although I acknowledge that the issue is not entirely free from doubt, I would reverse the decision of the district court which denies the appellant's motion for summary judgment.

---

1.  As the majority notes, the Department of Justice has adopted the HEW regulations without revision.  *See* 46 Fed.Reg. 40686.  The current version of these regulations is now at 28 C.F.R. § 41.3(e).