Helen Jean GALLAGHER,
Plaintiff–Appellant,

v.

CROGHAN COLONIAL BANK; Thomas
Hite, in his capacity as president of Cro-
ghan Colonial Bank; Pamela J. Swint,
in her capacity as assistant personnel
officer of Croghan Colonial Bank; Mi-
chael Wagner, in his capacity as former
personnel manager of Croghan Colonial
Bank; Margaret Ramirez, in her capaci-
ty as manager of the Operations Center
for the Croghan Colonial Bank, Defen-
dants–Appellees.

No. 95–3285.

United States Court of Appeals,
Sixth Circuit.

Argued April 15, 1996.

Decided July 12, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 21, 1996.

Gary E. Horn (briefed), C. Thomas McCarter (argued and briefed), Newcomer, McCarter & Green, Toledo, OH, for Helen Jean Gallagher.

Terrance L. Ryan (argued and briefed), Ryan, Wise & Miller, Toledo, OH, for Croghan Colonial Bank, Thomas Hite, Pamela J. Swint, Michael Wagner, Margaret Ramirez.

Before: CONTIE, SUHRHEINRICH and COLE, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Plaintiff Helen Jean Gallagher appeals the district court's grant of summary judgment to defendants on her claims of age and handicap discrimination and her state law claim of intentional infliction of emotional distress. Defendants are Croghan Colonial Bank ("Croghan") where plaintiff was employed as a teller, and four employees of Croghan. We AFFIRM.

## I.

Plaintiff was born in 1930 and was sixty years old when she brought this action. She began employment as a teller at a Croghan branch office in 1971. She later transferred to the main office, where she worked at the drive-through window. At the main office, Croghan documented certain deficiencies in plaintiff's performance. Due to customer complaints in April and May 1990, plaintiff was transferred to a mail clerk position at a different location. Plaintiff's transfer was effected without a reduction in pay or benefits. Croghan claims that upon this transfer it informed plaintiff that she would be terminated if her performance did not improve.

Plaintiff took medical leave from August 24, 1990 until October 9, 1990, due to vision problems. Defendants contend that plaintiff's performance did not improve after her return to work in October. Croghan terminated her employment on January 15, 1991.

Plaintiff filed a charge with the state civil rights commission and the EEOC alleging that Croghan discriminated against her on the basis of her age and handicap in transferring her to the mail clerk position and dismissing her. Thereafter, plaintiff filed an eleven-count complaint in district court. The district court granted summary judgment to defendants on all claims except plaintiff's claim of age discrimination in her discharge. Plaintiff was granted leave to dismiss that remaining claim without prejudice in order to appeal the claims now before this court: (1) handicap discrimination pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 and 794a ("Act"); (2) age discrimination in her transfer pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"); and (3) intentional infliction of emotional distress under state law.

## II.

We review the district court's grant of summary judgment de novo. *Harrow*

*Prods., Inc. v. Liberty Mut. Ins. Co.,* 64 F.3d 1015, 1019 (6th Cir.1995). Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c); *Harrow,* 64 F.3d at 1019.

### A. Handicap Discrimination Under Rehabilitation Act

Plaintiff claims that defendants' conduct violated the Rehabilitation Act, which prohibits "any program or activity receiving Federal financial assistance" from discriminating on the basis of a disability. 29 U.S.C.A. § 794 (West Supp.1995). The Act further provides that the remedies of Title VI of the Civil Rights Act of 1964 be available to persons aggrieved under the Act. 29 U.S.C.A. § 794a (West 1985). "Federal financial assistance" is defined in accompanying regulations as "any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty)" involving federal assistance. 28 C.F.R. § 41.3(e) (1995).

■ Plaintiff maintains that Croghan is a recipient of federal aid for the purposes of the Rehabilitation Act because it makes student loans which are subsidized and guaranteed with federal funds. That is, Croghan receives federal funds directly as compensation for making student loans at below-market interest rates. In the event of a default, the state aid commission is authorized to use state and federal funds to reimburse lenders such as Croghan. Ohio Rev.Code. Ann. § 3351.13 (Anderson 1995).

The district court determined that plaintiff had not established a prima facie case of discrimination under the Rehabilitation Act because Croghan was not an "intended recipient" of federal financial assistance for purposes of the Rehabilitation Act, relying on the analysis of *United States Dep't of Transp. v. Paralyzed Veterans,* 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986). In *Paralyzed Veterans,* the Supreme Court held that commercial airlines were not recipients of federal assistance for purposes of the Rehabilitation Act merely because they derived economic benefit from federal assistance to

airports and the air traffic control system. *Id.* at 607, 106 S.Ct. at 2712.

*Paralyzed Veterans* is not directly applicable because, unlike the airlines in that case, Croghan actually receives federal funds. Nevertheless, *Paralyzed Veterans* suggests in dicta that the operative inquiry in such cases is whether an entity is the "intended recipient" of the benefits of the federal assistance. *Id.* at 606–07, 106 S.Ct. at 2712–13. Using this analysis, the district court evaluated the purpose of the Higher Education Act of 1965, the federal statute authorizing the federal funds at issue. 20 U.S.C.A. § 1071(a)(1) (West 1990). The district court found that the intended recipients of the assistance were students, not the banks which disburse the loans. Therefore, the district court held, Croghan could not be considered a recipient of "Federal financial assistance" for purposes of the Rehabilitation Act.

Plaintiff argues that the Eleventh Circuit's opinion in *Moore v. Sun Bank,* 923 F.2d 1423 (11th Cir.1991), should control. *Moore* held that the Rehabilitation Act applied to a bank because it made loans guaranteed by the Small Business Administration. *Id.* at 1432. The *Moore* court distinguished mere beneficiaries, such as the airlines in *Paralyzed Veterans* who were not direct recipients of federal funds, from banks receiving default reimbursements made directly from Treasury monies. *Id.* at 1432. Defendants counter that *Moore* is inconsistent with *Paralyzed Veterans.*

Initially, we note that the regulations accompanying the Act clearly exclude contracts of insurance or guaranty as well as procurement contracts. 28 C.F.R. § 41.3(e). Both aspects of the program at issue in our case fall within these exclusions. The default insurance is a "contract of insurance" excluded by the regulations. The interest subsidies provided to Croghan are akin to procurement contracts, in that the subsidies are compensation by the government for lending to students at below-market rates.

■ An agency's construction of a statutory scheme that it is entrusted to administer is entitled to a degree of deference. *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S.

837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *BP Exploration & Oil, Inc. v. EPA,* 66 F.3d 784, 792 (6th Cir.1995). In the absence of an unambiguous expression of clear congressional intent, we must ask whether the agency's answer is based on a "permissible construction of the statute," *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782, and "reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843 n. 9, 104 S.Ct. at 2782 n. 9.

■ We are persuaded that § 41.3(e) is a permissible interpretation of the Act, consistent with the "intended recipient" analysis suggested by *Paralyzed Veterans* and applied by the district court. We reject *Moore* to the extent it is incompatible with our holding. As noted by one court, the coverage of the Rehabilitation Act does not follow federal aid "past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement." *Hamilton v. Illinois Cent. R.R. Co.,* 894 F.Supp. 1014, 1022 (S.D.Miss.1995). Applying § 41.3(e), we hold that Croghan did not receive federal financial assistance for purposes of the Rehabilitation Act by disbursing loans to students pursuant to federal student loan legislation. Because Croghan was not receiving federal financial assistance, plaintiff cannot establish a prima facie case of discrimination under the Rehabilitation Act. *McDonald v. Massachusetts,* 901 F.Supp. 471, 477–78 (D.Mass.1995). The district court's ruling on this claim was proper.

### B. Discriminatory Demotion Under ADEA

■ Plaintiff also challenges the district court's conclusion that there was no continuing violation that would make timely her charge of discrimination in her transfer to the mail clerk position. Plaintiff concedes that her EEOC charge regarding her transfer was not filed within the ADEA limitations period of 300 days, but contends that defendants' conduct beginning with her transfer and continuing through her dismissal constitutes a continuing violation. *See* 29 U.S.C.A. § 626(d) (West 1985) (setting forth ADEA filing requirements). Defendants respond that no common thread of age discrimination connects plaintiff's transfer and her eventual dismissal.

■ To establish a continuing violation, plaintiff must first produce evidence of a "current" violation taking place within the limitations period. *Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991). Second, plaintiff must show that the current violation, falling within the limitations period, is indicative of a pattern of similar discriminatory acts continuing from the period prior to the limitations period. *Held v. Gulf Oil Co.,* 684 F.2d 427, 430 (6th Cir.1982).

Assuming plaintiff can establish a violation regarding her dismissal, for which the charge was timely filed, she nevertheless has not produced evidence of a continuing violation linking the dismissal with her earlier transfer. *Dixon,* 928 F.2d at 216. The only evidence presented by plaintiff is that (1) defendants did not normally keep notes on the performance of their employees but did in her case; (2) plaintiff's doctors advised defendants of visual limitations that could prevent her from working; and (3) plaintiff's performance was judged against other workers who did not have visual or psychological problems. We fail to see any pattern of conduct that discriminated against plaintiff because of her age, or any other illegal link between her transfer and subsequent dismissal. Thus, plaintiff's untimely EEOC charge regarding her transfer is not made timely by virtue of a continuing violation. The district court therefore correctly granted summary judgment on this claim.

### C. Intentional Infliction of Emotional Distress

■ Lastly, plaintiff argues that her transfer, where defendants knew of her medical condition, creates a genuine issue of material fact on her claim of intentional infliction of emotional distress. We disagree. Liability for this tort in Ohio lies only where "the conduct has been so outrageous in character ... as to go beyond all possible bounds of decency ... and [is] utterly intolerable in a civilized community." *Reamsnyder v. Jaskolski,* 10 Ohio St.3d 150, 462 N.E.2d 392, 394 (1984). Even assuming plaintiff's ver-

sion of the facts is true, these facts alone simply do not meet the standard of outrageousness described in *Reamsnyder*. The district court correctly granted summary judgment on plaintiff's claim of intentional infliction of emotional distress.

## III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.