REAMSNYDER, APPELLANT, ET AL., *v.* JASKOLSKI ET AL., APPELLEES.

[Cite as Reamsnyder *v.* Jaskolski (1984), 10 Ohio St. 3d 150.]

(No. 83-952—Decided April 25, 1984.)

Mr. *Walton H. Donnell,* for appellant.

*Messrs. Cobourn, Smith, Rohrbacher & Gibson, Mr. David J. Rohrbacher* and *Mr. Matthew J. Rohrbacher,* for appellees Agency Rent-A-Car and Kevin Cassidy.

*Messrs. Jones, Schell & Schaefer, Mr. Willis P. Jones, Jr.,* and *Mr. Henry G. Kolb,* for appellees Underwriters Adjusting Co. and Robert Jacoby.

*Per Curiam.* Since the grant of appellees' Civ. R. 12(B)(6) motions and their affirmance by the court of appeals in the case *sub judice,* this court has recognized the tort of intentional infliction of emotional distress. See *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, where the court held:

"One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

The intentional or reckless infliction of emotional distress is an independent tort which does not require an underlying tort for an injured party to recover.[1] However, the court recognized in *Yeager, supra,* that the conduct

---

[1] *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 374, reads in pertinent part:

of the alleged tortfeasor must be "extreme and outrageous." The court found the standard set forth in comment *d* to Section 46 of the Restatement of the Law 2d, Torts (1965) 71, 73, to be helpful in defining "extreme and outrageous":

"* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *"

Based upon the foregoing standards we affirm the judgment of the court of appeals as to defendants-appellees Jacoby and Underwriters Adjusting Co. The conduct of Jacoby in his telephone conversations with the appellant cannot, as a matter of law, be found to reach the level of "extreme and outrageous" conduct required by the court in *Yeager, supra.*

However, the alleged conduct of defendant-appellee Cassidy, representing Agency Rent-A-Car, states a sufficient claim for relief for intentional or reckless infliction of emotional distress.

Based upon all the foregoing we affirm the judgment of the court of appeals in part with respect to appellees Jacoby and Underwriters Adjusting Co. We reverse the court of appeals in part and remand the cause to the trial court for further proceedings on the cause of action for intentional or reckless infliction of emotional distress with respect to appellees Cassidy and Agency Rent-A-Car.

*Judgment accordingly.*

---

"The standard * * * [adopted] in our recognition of the tort of intentional infliction of serious emotional distress is succinctly spelled out in the Restatement * * *.

"This approach discards the requirement that intentionally inflicted emotional distress be 'parasitic' to an already recognized tort cause of action * * *."

CELEBREZZE, C.J., SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN, LOCHER and HOLMES, JJ., concur in part and dissent in part.

WILLIAM B. BROWN, J., concurring in part and dissenting in part. I agree with the majority in its discussion of the appropriate standard to be applied in cases alleging the tort of intentional infliction of emotional distress. I also agree that the conduct of defendant-appellee Jacoby fails, as a matter of law, to rise to the level of "extreme and outrageous" conduct required under *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369. However, I dissent from the determination that the alleged conduct of defendant-appellee Cassidy, representing Agency Rent-A-Car, is sufficient to state a claim for relief for intentional or reckless infliction of serious emotional distress.

Cassidy's conduct allegedly consisted of threatening, over the phone, to tear Reamsnyder's face off and informing him that the rental car at the heart of the dispute had been reported to the police as stolen. If true, these allegations represent a close case on whether a cause of action has been sufficiently stated. But upon examination of other cases adopting the Restatement of Torts 2d, Section 46 approach, I cannot accept that Cassidy's alleged actions would arouse the resentment of an average member of the community and lead him to exclaim "outrageous!"

Several courts have considered conduct equally egregious yet more imminent than that in the present case and have found it not sufficiently outrageous to give rise to a cause of action. In *Nestlerode* v. *Federal Ins. Co.* (1979), 66 App. Div. 2d 504, 414 N.Y.Supp. 2d 398, plaintiff alleged that an insurance attorney told him that rejection of a settlement offer was going to cause plaintiff to lose his business. The court noted that such conduct, if true, would demonstrate a violation of the Code of Professional Responsibility but would not give rise to a cause of action for intentional infliction of severe emotional distress. The result was the same in *Wiehe* v. *Kukal* (1979), 225 Kan. 478, 592 P. 2d 860, where a landowner responded to the discovery that his property was being fenced by another with a spontaneous verbal outburst, profane and disparaging, coupled with an assault with a pitchfork. In *Farnor* v. *Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E. 2d 591, a landlord swore at his tenant and told her she would not get her property, which was still in the apartment, unless she paid three months' rent and forfeited her security deposit. The landlord later threatened to confiscate his tenant's furniture. The Illinois court held that such conduct did not rise above the category of slight hurts which are the price of modern society. In *Bureau of Credit Control* v. *Scott* (1976), 36 Ill. App. 3d 1006, 345 N.E. 2d 37, one party received a series of fifteen harassing phone calls, made to her, her parents and her employer in an attempt to collect a debt. Although the calls placed the claimant's job in jeopardy the distress which would be suffered by an ordinary person under the circumstances was not severe enough to support a

cause of action. It has also been held that the refusal to give a professor keys to a lab, failure to give adequate notice of department meetings, threats to institute action with an eye to terminating his employment, and assigning him to teach classes outside of his specialty in order to humiliate and embarrass were insufficient to state a claim for intentional infliction of serious emotional distress under the Restatement standard. *Waldon* v. *Covington* (D.C. App. 1980), 415 A. 2d 1070.

It is apparent, when considering these cases and the language of Section 46 of the Restatement of Torts 2d, and its accompanying comments, that several factors must be evaluated in determining whether a particular case states a claim for the intentional infliction of emotional distress. The first and most important is that an objective standard is used. Absent actual knowledge by the actor that the victim is highly emotional, easily distraught, or suffering from a particular susceptibility to mental or emotional injury, outrageous conduct is that which is regarded as atrocious and intolerable in a community. According to comment *d* to Section 46, the proper case is one which the average member of the community views as "outrageous." Thus, Reamsnyder's contentions of a peculiar susceptibility to Cassidy's alleged onslaught are immaterial in light of the fact that he has never claimed that Cassidy was aware of any particular sensitivity of his.

Other important factors include the duration of the abuse and the immediacy of the threat or apparent ability to carry it out. See Restatement of the Law 2d, Torts (1965), at comments *j* and *k*. In the present case, Reamsnyder was not subjected to an extended course of conduct. All of the disturbing remarks occurred within one brief telephone conversation. Nor was there a lengthy period of time in which Reamsnyder was left in fear. Within twenty to thirty minutes of the phone call, Cassidy had apologized and admitted that he had not called the police. Indeed, Reamsnyder initiated a second telephone call and continued negotiations with Cassidy over the status of the car. Since the conversations occurred over the phone there was no immediate, impending threat of harm to Reamsnyder. The two men met in person the very next day, whereupon Cassidy again apologized for his outburst.

Thus, I find none of the compounding factors discussed above present in this case. Using the aforementioned cases as a guide, I can only conclude that the conduct of defendant-appellee Cassidy was not so extreme and outrageous as to satisfy the *Yeager* and Restatement standard. Therefore, the dismissal by the trial court, even though made prior to *Yeager*, was not incorrect. For the foregoing reasons, I would affirm the judgment of the court of appeals with regard to all defendants.

LOCHER and HOLMES, JJ., concur in the foregoing opinion.