SCOTT et al., Appellants,

v.

SPEARMAN, Appellee.

[Cite as *Scott v. Spearman* (1996), 115 Ohio App.3d 52.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 95 CA 55.

Decided March 15, 1996.

*Michael D. Smith,* for appellants.

*William C. Hayes,* for appellee.

———

FARMER, Judge.

On September 1, 1974, Roger Scott ("Scott") and other individuals, including Scott's father and brother, were killed in an airplane crash. Scott was survived by his wife, appellee, Vonda Spearman, and two children, Christopher and Matthew Scott. Scott was also survived by his mother, Betty J. Scott, sister, Christiane Marie Scott, and brother, Herman L. Scott, Jr., appellants herein.

Scott was buried in Greenhill Cemetery near Johnstown, Ohio, next to his father and brother. Subsequent to the burial, appellee place a double grave marker on Scott's grave and the empty plot placed directly beside it.

On February 20, 1976, appellee married Richard Spearman. They live in Pataskala, Ohio with Christopher and Matthew, both children now being adults. By letter dated June 15, 1994, appellant Betty Scott requested that appellee take some action regarding the double grave marker because the stone did not belong on the grave site. On or about June 24, 1994, appellee filed an application for disinterment to have Scott's remains disinterred and moved to Pataskala Cemetery in Pataskala. On June 28, 1994, Scott's remains were disinterred and moved pursuant to the application.

On September 26, 1994, appellants filed a complaint against appellee seeking damages for wrongful disinterment, trespass and intentional infliction of emotional distress. On March 16, 1995, appellee filed a motion for summary judgment. By judgment entry dated April 19, 1995, the trial court granted the motion.

Appellants filed a notice of appeal, and this matter is now before this court for consideration. The assignments of error are as follows:

I

"The trial court erred in granting the appellee's motion for summary judgment as there are genuine issues as to material facts, and defendant is not entitled to judgment as a matter of law."

II

"The trial court erred in its finding that appellee had the absolute authority to disinter the remains of Roger D. Scott, deceased, pursuant to R.C. 517.23."

### III

"The trial court erred in its determination that appellants cannot recover for intentional infliction of emotional distress."

### IV

"The trial court erred in its determination that appellants cannot recover for trespass."

Appellants' four assignments of error challenge the trial court's decision in granting summary judgment for appellee. In order to grant a motion for summary judgment, the court must find, in construing the facts most favorable to the opposing party, that there exist no genuine issues of material fact and as a matter of law the movant is entitled to judgment. Civ.R. 56; *Temple v. Wean* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267. Further, as an appellate court, we must stand in the shoes of the trial court and review summary judgment on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212.

### Assignment of Error Nos. I, II and IV

Appellants claim there exist genuine issues of material fact as to the ownership of the burial plot and, therefore, the trial court erred in granting summary judgment. Appellants claim the trial court erred in finding under R.C. 517.23 that appellee had the authority to enter and disinter Scott's remains and as a result, no trespass occurred. We disagree.

R.C. 517.23 controls the disinterment of bodies:

"The board of township trustees or the trustees or directors of any cemetery association, or other officers having control and management of a cemetery, on application of the surviving spouse of the deceased or, if the deceased had no surviving spouse, on application of the person who assumed financial responsibility for the funeral and burial services of the deceased, shall disinter or issue a permit for such disinterment and deliver any body buried in such cemetery to the applicant, on payment by the applicant of the reasonable cost and expense of disinterment."

Appellants point out that R.C. 517.23 was amended to its present form in 1987 after Scott's death. Appellants argue that the 1953 version of R.C. 517.23 permitted application made by "next of kin":

"The board of township trustees or the trustees or directors of any cemetery association, or other officers having control and management of a cemetery, shall, on application of the next of kin of the deceased, being of full age, disinter or issue a permit for such disinterment and deliver any body buried in such

cemetery to such next of kin, on payment of the reasonable cost and expense of disinterment * * *."

On May 15, 1985, legislation was introduced to make the definition of "next of kin" explicit:

"The board of township trustees or the trustees or directors of any cemetery association, or other officers having control and management of a cemetery, shall, on application of the next of kin of the deceased, being of full age, disinter or issue a permit for such disinterment and deliver any body buried in such cemetery to such next of kin, on payment of the reasonable cost and expense of disinterment. AS USED IN THIS SECTION AND SECTION 517.24 OF THE REVISED CODE, 'NEXT OF KIN' AND 'NEXT OF KIN OF THE DECEASED' MEAN THE SURVIVING SPOUSE OF THE DECEASED, OR, IF THERE IS NO SUCH SURVIVING SPOUSE, THEN THE REMAINING NEXT OF KIN OF THE DECEASED." (Emphasis *sic.*) H.B. No. 534.

 Appellants argue that to use the 1987 amended bill would be a retroactive application of law prohibited by Section 28, Article II, Ohio Constitution. We disagree because the prohibition against retroactive application of law applies only to substantive law and does not apply to remedial law. *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 533 N.E.2d 743. The test for a remedial law is whether vested rights are divested or whether it "operates to destroy an accrued substantive right which arose by virtue of the * * * laws of this state." *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 59, 61 O.O.2d 295, 301, 290 N.E.2d 181, 188–189.

In our review of the statute's historical amendments, we find the changes not to be substantive in nature because the statute defined the term "next of kin" and expanded it to a surviving spouse. Appellants by definition were not Scott's next of kin, but Scott's children were. Further, the application for removal was made by the proper party under the statute then existing at the time.

From the uncontradicted evidence presented to the trial court, it was established that appellee was Scott's surviving spouse and Christopher and Matthew were Scott's children. The formal application for disinterment was made by appellee. Further, it is undisputed that appellee paid for Scott's funeral and burial expenses.

The trial court concluded that material facts were not in dispute, and we concur. R.C. 517.23 is clearly specific as to who has the right to request disinterment, and there is no dispute that appellee met the burden of being the surviving spouse and the person who paid the funeral and burial expenses. We fail to find that the trial court applied the wrong standard in reviewing the issue on summary judgment. We concur with the trial court's analysis that the present

R.C. 517.23 applies and appellee had the statutory right and authority to disinter Scott's remains.

As for their action in trespass, appellants argue it is not predicated only on their interpretation of R.C. 517.23, but also on the ownership of the burial plots and appellee's removal of Scott's remains. The ownership of the burial plots is in dispute. In order to address this issue, we will assume under a Civ.R. 56 standard that appellant Herman Scott, Jr. owns the burial plots. Appellants wish this court to view burial plots as real property and subject to trespass.[1] We are unable to reach that conclusion. By definition, at worst appellee was a licensee [2] on the property and when vested with the statutory authority of R.C. 517.23, appellee could not be termed a trespasser. Further, there is no proof appellee actually physically trespassed on the burial plots for disinterment. The disinterment was done under color of law and by definition fails as a trespass.

Assignments of Error I, II and IV are denied.

### Assignment of Error No. III

Appellants claim the trial court erred in dismissing their action for intentional infliction of emotional distress. We disagree.

By judgment entry dated April 19, 1995, the trial court found as follows:

"Additionally, the plaintiffs cannot recover for intentional or negligent infliction of emotional distress where the defendant was acting under color of law and was permitted to do that which she did. Since Ohio Legislature has provided for disinterment pursuant to the statutory authorization, this Court cannot find that such authorization is so outrageous as to go beyond all possibly [sic] bounds of decency as argued by the plaintiffs. When authorized by law to do an act, the doing of that act cannot form the basis of an intentional tort action regardless of what the intent of the party doing the act may have been."

As has been recognized by the Supreme Court of Ohio, it is not necessary to have a separate negligent act or intentional act to cause the independent tort of intentional infliction of emotional distress. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. The conduct complained of must be

---

1. "A trespasser is one who unauthorizedly goes upon the private premises of another without invitation or inducement, express or implied, but purely for his own purposes or convenience; and where no mutuality of interest exists between him or the owner or occupant." *Allstate Fire Ins. Co. v. Singler* (1968), 14 Ohio St.2d 27, 29, 43 O.O.2d 43, 44–45, 236 N.E.2d 79, 80–81.

2. A licensee is "a person who enters the premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation." *Provencher v. Ohio Dept. of Transp.* (1990), 49 Ohio St.3d 265, 266, 551 N.E.2d 1257, 1258–1259.

"extreme and outrageous." *Reamsnyder v. Jaskolski* (1984), 10 Ohio St.3d 150, 153, 10 OBR 485, 487–488, 462 N.E.2d 392, 394–395. Outrageous conduct is described as follows:

" ' * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaims, "Outrageous! "

" 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *' " *Reamsnyder* at 153, 10 OBR at 487–488, 462 N.E.2d at 394–395, quoting Restatement of the Law 2d, Torts (1965), Section 46, Comment *d.*

Appellants rely on *Brownlee v. Pratt* (1946), 77 Ohio App. 533, 33 O.O. 356, 68 N.E.2d 798, for the proposition that damages can be recovered for mental pain and anguish without a physical injury in dead body cases. *Brownlee* is not applicable in the case *sub judice* because it is factually different. The tort in *Brownlee* was causing physical changes to a burial vault and disregarding the fiduciary's duties.

The question remains, does the lawful act sanctioned by R.C. 517.23 meet the definition set forth in *Reamsnyder?* For purposes of summary judgment, we will assume the disinterment caused emotional distress. However, what the result was is not the issue. The issue is whether the act of disinterment is an outrageous and extreme act. This is not a question of law, but an issue of law. Can a legally sanctioned act give rise to the tort of intentional infliction of emotional distress? We conclude it cannot. To hold otherwise would give rise to intentional tort claims for every Internal Revenue Service notice or filing. April 15 in every year would give rise to a whole string of lawsuits for intentional

infliction of emotional distress. As appellee argues, she owed no duty to appellants in the legal sense, and in order for a tort to be committed, there must be an existing duty. Without a duty coupled with a clear statutory right (R.C. 517.23), there is no tort.

Assignment Error III is denied.

The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

*Judgment affirmed.*

WISE, J., concurs.

HOFFMAN, P.J., dissents.

WILLIAM B. HOFFMAN, Presiding Judge, dissenting.

I respectfully dissent. The majority overrules appellant's third assignment of error on the grounds that appellee cannot be held liable for intentional infliction of emotional distress as a matter of law because she was legally entitled to disinter the remains of Roger Scott pursuant to R.C. 517.23. In so holding, the majority broadly reasons that a legally sanctioned act cannot give rise to the tort of intentional infliction of emotional distress. I disagree with both the majority's holding on this issue, and the broad legal proposition on which it is based.

"In order to recover on an action for intentional infliction of serious emotional distress, four elements must be proved: 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community' [citation omitted]; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.' [Citation omitted]." *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66–67, 463 N.E.2d 98, 103–104.

I find nothing in this test to preclude a claim for intentional infliction of emotional distress precipitated by the commission of an otherwise legal act. Further, I see no reason why the doing of a legal act, in and of itself, should absolutely shield an actor from liability for intentional infliction of emotional

distress if the four elements set forth in *Pyle, supra,* are met in a given case.[3] Though doing a legal act certainly makes it more difficult to prove the underlying tort, I do not believe it is an absolute bar to liability.

Disinterment provides perhaps the most persuasive example of when the doing of a legal act may give rise to a claim for intentional infliction of emotional distress. Imagine a scenario in which a surviving spouse disinters the remains of her deceased husband on the night before the anniversary of his death, without informing the deceased's mother, father or extended family members and with full knowledge that his family is planning a memorial service the next morning to commemorate his death. Imagine further that the spouse repeatedly disinters the husband's body, continuously moving it to different locations once the family discovers where it has been reburied. The spouse fully acknowledges she has acted solely to cause the husband's family serious emotional distress, and, in fact, the spouse's actions proximately cause serious mental anguish to the husband's family. Under the majority's analysis, the family cannot, as a matter of law, predicate a claim for intentional infliction of emotional distress on the spouse's actions, despite the strong evidence supporting each of the four elements set forth in *Pyle, supra.* I find this to be an illogical result and one not mandated by either the test set forth for intentional infliction of emotional distress in *Pyle* or the underlying rationale for this cause of action.

With regard to the instant case, although the facts are not as extreme as those set forth in the hypothetical above, I believe the appellants herein have set forth sufficient evidence under Civ.R. 56 standards to survive summary judgment. Viewing the evidence in a light most favorable to the appellants, I believe the evidence presented is sufficient to warrant the inference that the appellee's actions were done with intent to cause appellant's serious emotional distress. In addition, I believe reasonable minds could differ as to whether the appellee's actions were "so extreme and outrageous as to go 'beyond all possible bounds of decency.'" *Pyle, supra,* 11 Ohio App.3d at 34, 11 OBR at 66, 463 N.E.2d at 103–104. Further, I believe there exist genuine issues of material fact regarding the issues of proximate causation and the seriousness of the appellant's alleged resulting mental anguish. Accordingly, I believe the appellant's third assignment of error should be sustained.

One final note. In overruling appellant's third assignment of error, the majority states: "[Appellee] owed no duty to appellants in the legal sense, and in

---

3. I believe this reasoning is implicitly supported by *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 570 N.E.2d 1076, in which the Ohio Supreme Court held that an action predicated upon intentional infliction of emotional distress brought by an at-will employee against his employer is not foreclosed merely because his discharge from employment was obtained in a lawful manner.

order for a tort to be committed, there must be an existing duty." I do not believe proof of an existing duty is necessary to show the commission of an intentional, as opposed to a negligence-based, tort. Consequently, I do not believe any absence of a duty is relevant to appellant's claim for intentional infliction of emotional distress.

I would sustain appellant's third assignment of error, reverse the decision of the Court of Common Pleas of Licking County, and remand for further proceedings consistent with this dissent.