OPINION
Appellant, Lucille Petrarca, appeals a judgment entry from the Trumbull County Court of Common Pleas granting summary judgment in favor of appellees, Phar-Mor, Inc. ("Phar-Mor") and Susan Caldwell, nka Susan Lipp ("Ms. Lipp").
On August 6, 1999, appellant filed a complaint against appellees asserting claims for intentional infliction of emotional distress, false imprisonment, defamation, and negligence. Appellees filed answers to appellant's complaint. Thereafter, on June 16, 2000, appellees filed a motion for summary judgment. On July 28, 2000, appellant submitted a memorandum in opposition to appellees' motion for summary judgment.
Appellant's deposition reveals that on April 7, 1999, appellant, an eighty-two year old woman, visited a Phar-Mor store to have a prescription filled. She presented her prescription bottle to an employee working in the pharmacy and was told it would take about twenty minutes. As appellant was waiting, the pharmacy got busier, and a line started to form. After about thirty-five minutes, her prescription was called. A cashier told her that she would not have to go to the back of the line since she had been waiting so long. The cashier, whose name appellant did not know, took appellant's credit card and began processing her sale.
According to appellant, as the sale was being processed, Ms. Lipp, an employee of Phar-Mor, yelled at her and told her to "go to the back of the line where [she belongs]." She also told appellant that going in front of everyone was not fair. Appellant informed Ms. Lipp that the cashier told her the sale could be processed when her prescription was ready. Appellant explained that Ms. Lipp "kept on and on * * * for a few minutes, and [she] didn't know what [Ms. Lipp] was saying." She recalled one of the patrons telling Ms. Lipp to quit it and that Ms. Lipp should have some respect since appellant "didn't do anything wrong * * *." The cashier continued with the sale.
Appellant stated that Ms. Lipp "said so much that [she] became so nervous and emotional that [she] just couldn't hear [Ms. Lipp]." She added that as she was signing her sales slip she "started to shake, and * * * got very emotional, and * * * didn't even answer [Ms. Lipp]." Appellant walked past eight or nine customers and recalled that "one lady looked and shook her head, and said [she didn't] know what was wrong with [Ms. Lipp]. * * * [Appellant] was crying, and when [the customer] made that remark, [appellant] didn't even turn around and answer her." Appellant remembered Ms. Lipp informing her that there was a Rite Aid down the street.
Appellant approached a manager named Jim about the incident. Jim told appellant that he heard what had transpired and that he had already talked to Ms. Lipp about it. Jim gave appellant a telephone number of a district manager. Appellant tried to call the district manager around 6:30 p.m. when she got home, but there was no answer. She did not try to telephone the manager at any other time. After the incident, appellant explained that she felt embarrassed and humiliated. Every time she related the story to a family member she would break down emotionally. She had high blood pressure, and due to the incident, she went to see her doctor later that week because she believed her pressure was high. Her physician did not change her medication. Further, she declared that she received no medical treatment, no counseling, and no psychological or psychiatric treatment as a result of what transpired on April 7, 1999. Appellant admitted that she had not lost any money because of the situation.
In an entry dated September 8, 2000, the trial court granted appellees' motion for summary judgment. Appellant timely filed this appeal and now asserts as error:
 "The [t]rial [c]ourt erred to the prejudice of [appellant] by failing to apply the appropriate law, in connection with [appellant's] claim for intentional infliction of emotional distress, and granting the [m]otion for [s]ummary [j]udgment filed by [appellees], regarding said claim."
 In her sole assignment of error, appellant posits that the trial court erred by not applying the appropriate law and granting summary judgment in favor of appellees.
Prior to granting a motion for summary judgment, a trial court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385. On appeal, the trial court's granting of summary judgment is reviewed de novo. Monrean v. Higbee Dept. Stores,Inc. (Dec. 29, 2000), Trumbull App. No. 99-T-0099, unreported, 2001 WL 20808, at 5.
In Phung v. Waste Mgt., Inc. (1994), 71 Ohio St.3d 408, 410, the Supreme Court of Ohio held that in order to prove intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." The Supreme Court has stated that liability has been found where the conduct has been so outrageous that it goes beyond all possible bounds of decency and is so atrocious that it is "utterly intolerable in a civilized society." Reamsnyder v. Jaskolski (1984),10 Ohio St.3d 150, 153. For a claim alleging intentional infliction of emotional distress, the emotional distress must be serious. Yeager v.Local Union 20 (1983), 6 Ohio St.3d 369, 374. "Serious" has been defined as:
 "* * * beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person * * * would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Paugh v. Hanks (1983), 6 Ohio St.3d 72, 78.
 Behavior that rises to the level of intentional infliction of emotional distress must be more than aggravating. Only conduct that is truly outrageous, intolerable, and beyond the bounds of decency is actionable; persons are expected to be hardened to a considerable degree of inconsiderate, annoying, and insulting behavior. Yeager at 375.
Appellant relies on a case from the First Appellate District which recognizes an actionable form of emotional distress in cases where the business relationship of the parties creates a situation where a plaintiff is entitled to protection by a defendant. Meyers v. Hot BagelsFactory, Inc. (1999), 131 Ohio App.3d 82. Under certain circumstances, the Meyers court indicates a plaintiff may recover for any injuries, including fright and terror, which result from a willful breach of duty, insult or unlawful treatment. Id. at 95. The court there determined that for public policy reasons, and because of the relationship between the parties, the law should provide a plaintiff redress for mental distress and humiliation caused from a defendant's insulting conduct.Id. However, this court and the Supreme Court have not adopted this modified standard. Thus, for purposes of this opinion, we will follow the Yeager standard.
In the instant matter, appellant's testimony revealed that she was nervous and emotional and that she felt embarrassed and humiliated after the April 7, 1999 incident. Appellant also admitted that she received no medical treatment, no counseling, and no psychological or psychiatric treatment from the occurrence. Therefore, the record demonstrates that appellant did not suffer emotional distress of the magnitude necessary to sustain a viable claim for intentional infliction of emotional distress pursuant to the Yeager standard. While appellant may have been humiliated and embarrassed, it cannot be said that her emotional injury was "severe and debilitating."
Furthermore, there were no evidential submissions which support the claim that Ms. Lipp acted in a manner so outrageous that it went beyond all possible bounds of decency and was utterly intolerable in a civilized society. Here, although Ms. Lipp's purported conduct could be characterized as aggravating and inappropriate, it was not so outrageous, intolerable, or beyond the bounds of decency. Although we do not condone the alleged comments made by Ms. Lipp, we conclude that these remarks did not constitute extreme and outrageous conduct. Even though the commentary may have been insulting and inappropriate, appellant has not proved that she suffered serious emotional distress.
We note that encounters like the one here may be on the increase because of the major change in local pharmaceutical services. This has caused a diminution of the traditional pharmacy setting where more personal relationships between patrons and local pharmacists were the norm for decades to the less personal type of interchange that exists in most pharmaceutical outlets today.
Hence, for the reasons set forth above, it is our view that appellant has failed to establish an actionable claim. As appellant has failed to present any evidence to establish that the conduct of appellees was "extreme and outrageous" or that the emotional injury she suffered was "severe and debilitating," summary judgment is appropriate as to her claim of intentional infliction of emotional distress. Accordingly, the record supports the conclusion that there was no genuine issue of material fact.
As an aside, we would caution the trial court to refrain from using the word "find" in its judgment entry in a summary judgment exercise. Such verbiage could give the appearance that the trial court is engaging in factual findings, which is not the proper role for a trial court in a summary judgment exercise. This court has previously stated that a trial judge's role in deciding a motion for summary judgment pursuant to Civ.R. 56(C) is not to decide issues of fact, but to determine whether there are any genuine issues of material fact to be decided. Riddle v.Newton Falls Exempted Village Bd. of Edn. (Oct. 7, 1988), Trumbull App. No. 4004, unreported, 1988 WL 105556, at 2.
Thus, appellant's lone assignment of error is not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
PRESIDING JUDGE DONALD R. FORD, NADER, J., concurs, GRENDELL, J., concurs in judgment only.