**N. Earl FITZGERALD, Plaintiff**

v.

**ROADWAY EXPRESS, INC.,**
**et al., Defendants**

**No. 3:02CV7545.**

United States District Court,
N.D. Ohio,
Western Division.

April 9, 2003.

Keith L. Mitchell, Toledo, for N. Earl Fitzgerald, Plaintiff.

Charles J. French, III, Baker & Hostetler, Cleveland, Jeffery T. Williams, Baker & Hostetler, Columbus, Jeremy R. Sayre, Baker & Hostetler, Cleveland, for Roadway Express, Inc., John Barker, Individually and as an employee of Roadway Express, Inc., John C. McAbier, Individually and as an employee of Roadway Express, Inc., Defendants.

## ORDER

CARR, District Judge.

Plaintiff N. Earl Fitzgerald brings this action against defendant Roadway Express, Inc. claiming racial discrimination in violation of 42 U.S.C. § 2000e *et seq.*, and against John Barker and John C. McAbier, individually and as employees of Roadway Express, claiming defamation, intentional infliction of emotional distress, interference with employment relationship, and civil conspiracy in violation of Ohio law. This court has jurisdiction pursuant to 42 U.S.C. § 2000e *et seq.* Pending is defendants' motion for partial dismissal, seeking dismissal of all claims except the race discrimination claim against Roadway Express. For the following reasons, the motion shall be granted.

## BACKGROUND

Plaintiff is a truck driver employed by defendant Roadway Express, a Delaware corporation doing business in Ohio. Defendant Barker is a labor relations manager for Roadway Express, and defendant McAbier is a terminal manager for Roadway Express.

Plaintiff began working for Roadway Express in October, 1985. Truck drivers employed by Roadway Express are covered by the National Master Freight Agreement ("NMFA"), a collective bargaining agreement with the International Brotherhood of Teamsters. In April, 2001, plaintiff's truck driving route was changed, and plaintiff, who is African–American, alleges he was treated differently than the truck driver who previously drove his route. On April 7, 2001, plaintiff wrote a letter to Roadway Express's corporate office, complaining that employees were receiving disparate treatment based on race.

On August 14, 2001, an incident took place at a Home Depot store in Toledo, Ohio, between plaintiff and a Home Depot employee named Christina Holmes. Holmes complained to Roadway Express about the incident. Roadway Express asked Home Depot employees who witnessed the incident to give written statements about what they saw. Roadway Express allegedly did not ask plaintiff what happened or request a written statement from him. On August 30, 2001, plaintiff was discharged from Roadway Express, but not taken out of service. On August 31, 2001, plaintiff was terminated and taken out of service.

Plaintiff alleges that Holmes had complained to Roadway Express about another driver, a white employee, on two previous occasions. Roadway Express allegedly talked to the driver, did not request written statements from Home Depot employees, and did not reprimand the driver. Plaintiff alleges he received disparate treatment based on race.

Using the procedures in the NMFA, plaintiff grieved his termination. At a grievance hearing on October 22, 2001, Barker and McAbier alleged that plaintiff had sexually harassed Holmes. At another grievance hearing on November 8, 2001, defendants Barker and McAbier again stated that plaintiff sexually harassed Holmes. Plaintiff claims these statements were false, and that Holmes never made any allegations of sexual harassment.

Plaintiff was reinstated on November 9, 2001. Plaintiff filed a charge of employ-

ment discrimination with the Equal Employment Opportunity Commission, received notification of the right to sue on October 9, 2002, and timely filed his complaint.

Defendants have moved to dismiss plaintiff's claims of defamation, intentional infliction of emotional distress, interference with business relationship, and civil conspiracy.[1]

## STANDARD OF REVIEW

No complaint shall be dismissed unless the plaintiff has failed to allege facts in support of plaintiff's claim that, construed in plaintiff's favor, would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *See Yanacos v. Lake County*, 953 F.Supp. 187, 191 (N.D.Ohio 1996). The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

### Discussion

### I. Preemption

Defendants argue that plaintiff's claims for defamation and intentional infliction of emotional distress are preempted by § 301

of the Labor Management Relations Act, which states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Since 1962, the Supreme Court has held that § 301 preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms. *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994) (*citing Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) *and Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). The need for uniformity and predictability in interpreting contract terms necessitates preemption. *DeCoe*, 32 F.3d at 215 (*citing Lueck*, 471 U.S. at 211, 105 S.Ct. 1904).

Not every state-law suit asserting a right relating in some way to a collective bargaining agreement provision, or to the parties to the agreement, is preempted by § 301. *Lueck*, 471 U.S. at 220, 105 S.Ct. 1904. Section 301 does not preempt those substantive rights, independent of the labor contract itself, provided to workers by a state where those rights may be determined without interpreting the contract. *Lingle v. Norge Div. of Magic Chef. Inc.*, 486 U.S. 399, 409, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The Court continued:

---

**1.** Plaintiff has stipulated to the dismissal of his race discrimination claim against defendants Barker and McAbier, and also to the

dismissal of his claim against them for breach of the covenant of good faith and fair dealing.

[E]ven if dispute resolution to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 409–10, 108 S.Ct. 1877 (footnote omitted); *see also Livadas v. Bradshaw,* 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (the deciding factor in a preemption case is the "legal character of a claim, as 'independent' of rights under the collective bargaining agreement") (*citing Lueck,* 471 U.S. at 213, 105 S.Ct. 1904).

"The assumption that the labor contract creates no implied rights is not one that state law may make. Rather, it is a question of federal contract interpretation." *Lueck,* 471 U.S. at 215, 105 S.Ct. 1904 (noting that an arbitrator could find the collective bargaining agreement at issue contained an implied term governing the dispute, and ruling, on that basis, that the claim was preempted by federal labor law); *see also Blanchard v. Simpson Plainwell Paper Co.,* 925 F.Supp. 510, 516 (W.D.Mich.1995) ("If an employer's conduct was authorized by the explicit or implicit terms of an agreement, there is § 301 preemption.") (citation omitted).

■ To determine whether § 301 preemption applies, a court must: 1) examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms; and 2) ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. *DeCoe,* 32 F.3d at 216. Unless both criteria are satisfied, § 301 preemption is warranted. *Id.*

■ To make the first determination, a court is not bound by the "well-pleaded complaint" rule, but instead will look to the essence of each of the plaintiff's claims, to determine whether he is attempting to disguise what is essentially a contract claim as a tort. *Id.* If the plaintiff can prove all of the elements of a claim without contract interpretation, his claim is independent of the contract. *Id.* (citing *Dougherty v. Parsec. Inc.,* 872 F.2d 766, 770 (6th Cir.1989)).

## A. Defamation

■ Plaintiff asserts that Barker and McAbier defamed him by alleging, at his grievance hearings, that he had sexually harassed Holmes. Defendants argue that to maintain his claim, plaintiff must allege that the communication was unprivileged, and that this court cannot determine whether the statements were privileged without interpreting the contract.

■ The elements of a defamation claim under Ohio law are: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting at least to negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Akron–Canton Waste Oil, Inc., v. Safety–Kleen Oil Servs., Inc.,* 81 Ohio App.3d 591, 601, 611 N.E.2d 955 (1992) (*citing* 3 Restatement, 2d, Torts § 558 (1977)).

■ The existence of a privilege, whether absolute or qualified, to make an otherwise defamatory statement is a mixed question of law and fact requiring an examination of the circumstances surrounding the pertinent communication. *Akron–Canton,* 81 Ohio App.3d at 601, 611 N.E.2d 955. In this case, the circumstances surrounding the communication are presented in the NMFA, and based on the Sixth Circuit's controlling opinion in *DeCoe* and persuasive cases from other jurisdictions, I conclude that the existence of a privilege only can be determined by examining the collective bargaining agreement.

In *DeCoe*, plaintiff asserted a claim for defamation after defendants accused him of sexual harassment as part of an investigation governed by a collective bargaining agreement. 32 F.3d at 217. The contract between plaintiff's employer and his union also contained a sexual harassment policy, imposing a duty on the employer, the union, and the individual defendants to identify and resolve harassment complaints. *Id.* Plaintiff brought his defamation claim under Michigan law, which required him to prove unprivileged publication. *Id.* The Sixth Circuit found that the defamation claim was preempted, stating:

> Against this background, it is difficult to understand how the plaintiff could establish that the challenged publications were unprivileged—which was his burden under Michigan law—without interpreting the CBA provisions that identified the duties imposed on all defendants.

*Id.* at 217.

Plaintiff argues that because his complaint alleged that the statements were made with actual malice (Doc. 1 at ¶¶ 31, 33), it is unnecessary for this court to consider whether the statements were privileged.

> In *Akron–Canton*, the court held:
>
> When a defendant possesses a qualified privilege regarding statements contained in a published communication, that privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice. In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity.

*Id.* at 602, 611 N.E.2d 955 (*citing Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609 (1991)).

Plaintiff cannot allege actual malice as a substitute for alleging that defendants'

statements were unprivileged; rather, plaintiff can allege actual malice only if necessary to overcome the defendants' qualified privilege. Put another way, if this court considered plaintiff's claim for defamation, the issue of actual malice would not arise unless defendants possessed a qualified privileged, and defendants could not be shown to possess a qualified privilege without this court's interpretation of the contract. Consequently, plaintiff's allegation of malice cannot help him state a claim for defamation.

Plaintiff also argues that the reasoning in *DeCoe* does not apply here, because that case was based on Michigan law. The Sixth Circuit, however, has held that the reasoning of *DeCoe* applies with equal force in Michigan and Ohio. *Potts v. Wilson*, 54 Fed.Appx. 190 (6th Cir.2002). In *Potts*, the Sixth Circuit relied on *DeCoe* in affirming the dismissal of Ohio defamation claim, based on statements made in an employee misconduct report and subsequent investigation. The court found that "proof of this claim required an interpretation of the collective bargaining agreement and the parties' relationship under that agreement." *Id.*

In this case, it is impossible to determine whether publication was privileged without evaluating the rights and responsibilities of Roadway Express and the individual defendants under the terms of the NMFA.

The NMFA provides that "[a]uthorized representatives of the Union and/or Employer may file grievances alleging violation of this Agreement, ..." (Doc. 11, Art. 7, § 1(c)). At a grievance hearing, the NMFA provides that "[t]he Employer shall provide any information relevant to a grievance containing specific factual allegations..." (Doc. 11, Art. 7, § 2.3).

Plaintiff's defamation claim necessarily implicates a specific provision of the collec-

tive bargaining agreement. In fact, plaintiff urges this court that his defamation claim does not require an evaluation of the labor contract, merely an evaluation of whether defendants' statements were false. Properly stated, plaintiff's claim is that the defendants did not comply with Article 7, § 2.3 of the NMFA.

The contract provides that any dispute arising from any section of the contract is grievable. (Doc. 11, Art. 7, § 1(b)). This means that disputes arising from the execution of the grievance hearings, a process outlined in Article 7, could be grievable. An arbitrator could provide relief to plaintiff if defendants made false statements in violation of Article 7, § 2.3. An arbitrator also could find that the labor contract contained an implied term concerning defamation in grievance hearings, which by their nature involve allegations of wrongdoing. As noted, a labor contract may create implied rights, as a matter of federal contract interpretation. *Lueck*, 471 U.S. at 215–16, 105 S.Ct. 1904 (noting that claim in lawsuit could be arbitrable, and finding it preempted).

Pertinent decisions from other courts support preemption of plaintiff's defamation claim. In *Monsour v. Delco Remy, Plant 25*, 851 F.Supp. 245 (S.D.Miss.1994), the court, citing fourteen district court opinions finding preemption of defamation claims, noted:

> [I]n all cases where [defamation] claims were ruled preempted, the claims arose either directly out of conduct relating to the grievance and arbitration procedure or questions were presented whether an employer's conduct was in accordance with its rights and obligations under the collective bargaining agreement.

*Id.* at 247; *see also Garley v. Sandia Corp.*, 236 F.3d 1200, 1211 (10th Cir.2001) (preempting defamation claim arising from defendants' statements during contract-authorized dismissal proceedings, because

the court would inevitably examine rights and obligations under the labor contract to decide whether statements were authorized); *Stafford v. True Temper Sports*, 123 F.3d 291, 296 (5th Cir.1997) (same); *Scott v. Machinists Lodge No. 190*, 827 F.2d 589, 594 (9th Cir.1987) (preempting defamation claim based on statements made in a counseling session, prearbitration meetings, and investigative hearings, because they could not be evaluated apart from the grievance procedure provided by the contract).

Alternatively, plaintiff's defamation claim is preempted because to maintain his claim, plaintiff would be required to show that defendants were at fault, the third element of a defamation claim under *Akron–Canton*, 81 Ohio App.3d at 601, 611 N.E.2d 955. Even assuming plaintiff merely would be required to show defendants were negligent, it would be necessary to interpret the contract in determining whether defendants breached any duty to plaintiff.

Because plaintiff cannot establish the elements of his defamation claim without interpreting the NMFA, his claim is preempted and must be dismissed.

### B. Intentional Infliction of Emotional Distress

Plaintiff argues that his claim for intentional infliction of emotional distress is not preempted by § 301, because this court would not have to interpret the contract to decide whether defendants' statements were outrageous. Defendants argue that because they were acting pursuant to the terms of the contract when they made the statements, it would be necessary to interpret the contract's terms to decide whether their statements were outrageous.

To maintain a claim for intentional infliction of emotional distress, a

plaintiff must prove: 1) the defendant intended to cause the plaintiff serious emotional distress; 2) the defendant's conduct was extreme and outrageous; and 3) the defendant's conduct was the proximate cause of the plaintiff's serious emotional distress. *Phung v. Waste Management, Inc.,* 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994) (citing *Reamsnyder v. Jaskolski,* 10 Ohio St.3d 150, 462 N.E.2d 392 (1984)). In defining what is "extreme and outrageous," Ohio has approved the standard expressed in the Restatement, 2d, of Torts, which provides for liability only " 'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Reamsnyder,* 10 Ohio St.3d at 153, 462 N.E.2d 392 (*quoting* Restatement, 2d, of Torts, § 46 cmt. d (1965)). Furthermore, in Ohio:

> conduct that might otherwise be extreme and outrageous, and thus actionable upon a claim for intentional infliction of emotional distress, is privileged when 'the actor ... has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress' ...

*Uebelacker v. Cincom Systems, Inc.,* 48 Ohio App.3d 268, 277, 549 N.E.2d 1210 (1988) (*quoting* 1 Restatement, 2d, of Torts, § 46 cmt. g (1965)).

The Supreme Court held in *Farmer v. United Bhd. of Carpenters and Joiners of America, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), that a claim for intentional infliction of emotional distress is not necessarily preempted by § 301. In *Farmer,* the Supreme Court allowed an intentional infliction of emotional distress claim to proceed where the emotional distress was resulted from alleged racial discrimination. The court held that because the "[discriminatory]" conduct complained of is neither specifically required nor authorized by the collective bargaining agreement," the derivative emotional distress claim also could be evaluated without reference to that agreement. 430 U.S. at 305, 97 S.Ct. 1056.

In this case, plaintiff, too, has asserted a race discrimination claim, but he does not base his emotional distress claim on the alleged discriminatory conduct. Instead, he bases his claim on the alleged defamatory conduct. (Doc. 1 at ¶¶ 38–39; Doc. 17 at 9). The alleged defamatory statements, moreover, accused plaintiff of sexual harassment; plaintiff has not alleged that the statements were racially biased or racially motivated. The statements also were "specifically required [or] authorized by the collective bargaining agreement," *Farmer,* 430 U.S. at 305, 97 S.Ct. 1056, making plaintiff's emotional distress claim subject to the terms of the labor contract.

When a plaintiff-employee claims intentional infliction of emotional distress based on statements made by his supervisors during grievance or dismissal proceedings conducted pursuant to a collective bargaining agreement, federal courts generally find that it will be necessary to interpret the agreement in determining whether the alleged statements were outrageous, and generally rule that the claim is preempted. *See, i.e., Garley,* 236 F.3d at 1214 (preempting claim for intentional infliction of emotional distress based on defendant's conduct during investigation pursuant to labor contract; determining whether conduct was outrageous required construction of defendant's rights and obligations under the contract); *Stafford,* 123 F.3d at 296 (same); *Scott,* 827 F.2d at 594 (same).

For example, plaintiff in *DeCoe,* like the plaintiff in this case, asserted a claim for intentional infliction of emotional distress based on the dissemination of allegedly false sexual harassment charges. 32 F.3d

at 218. The Sixth Circuit stated, "a defendant has not acted outrageously 'where he has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence was certain to cause emotional distress.'" *Id.* at 219 (citing *Polk v. Yellow Freight Sys., Inc.,* 801 F.2d 190, 196 (6th Cir.1993) (internal citation omitted)). Because a court must refer to the collective bargaining agreement to determine whether the employer pursued its legal rights under the agreement "in a permissible way," the court found that plaintiff's claim for intentional infliction of emotional distress was preempted. *Id.* at 220.

Similarly, the contract at issue in *Went v. LaFarge Corp.,* 136 F.Supp.2d 741, 743 (N.D.Ohio 2001), provided that the defendant employer could "terminate or otherwise relieve employees from duty for lack of work or other legitimate reason." Plaintiff alleged intentional infliction of emotional distress as a result of his termination. The court held:

> If the Defendants merely pursued their right to discharge the Plaintiff under the CBA, their conduct in doing so cannot be outrageous; if their conduct went beyond mere enforcement of their rights under the CBA, then their conduct *may* be outrageous. In order to resolve this issue, the Court must refer to the CBA. Accordingly, the Plaintiff's claim for intentional infliction of emotional distress is completely preempted by § 301 of the LMRA.

*Id.* at 743–44.

Plaintiff will not be able to show that defendants' behavior was outrageous without referring to the terms of the collective bargaining agreement, because defendants were acting under the terms of the agreement when they made the statements at issue in this case. Plaintiff's claim for intentional infliction of emotional distress is preempted by § 301.

## C. Section 301 Claims

The Supreme Court in *Lueck* held that where resolution of a state-law claim substantially depends upon analysis of a collective bargaining agreement, that claim must either be treated as § 301 claims or dismissed as preempted by federal labor law. 471 U.S. at 220, 105 S.Ct. 1904.

Plaintiff's claims for defamation and intentional infliction of emotional distress are substantially dependent upon analysis of the collective bargaining agreement, so they must be dismissed as preempted, under *Lueck,* unless they can be treated as § 301 claims.

To state a § 301 claim against his employer, plaintiff must prove: 1) that the employer's action violated the terms of the collective bargaining agreement; and 2) that the union breached its duty of fair representation. *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). Plaintiff has not alleged any breach of his union's duty. He cannot recast his preempted claims as § 301 claims, therefore, and they must be dismissed.

## II. Interference With Employment Relationship

Plaintiff's claim against the defendants for interference with an employment relationship is based on their statements during the grievance hearings. Defendant does not argue that this claim is preempted; rather, defendant argues that plaintiff cannot show an element of the claim.

In Ohio, the elements of a claim for tortious interference with a business relationship are:

> 1) a business relationship; 2) the wrongdoer's knowledge thereof; 3) an intentional interference causing a breach or termination of the relationship; and

4) damages resulting therefrom. The basic principle of a "tortious interference" action is that one, who without privilege, induces or purposely causes a *third party* to discontinue a business relationship with *another* is liable to the other for the harm caused thereby.

*Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.,* 125 Ohio App.3d 572, 583, 709 N.E.2d 190 (1997) (internal quotations and citations omitted) (emphasis added).

■ Ohio recognizes the cause of action for tortious interference with a business relationship when the business relationship at issue is an employment relationship. *Tessmer v. Nationwide Life Ins. Co.,* No. 98AP–1278, 1999 WL 771013, 1999 Ohio App. LEXIS 4633, at *21 (Sept. 30, 1999) (*citing Condon v. Body, Vickers & Daniels,* 99 Ohio App.3d 12, 22, 649 N.E.2d 1259 (1994)).

■ Ohio courts have ruled that a plaintiff-employee cannot state a claim against a fellow employee for tortious interference with an employment relationship. *Tessmer,* 1999 WL 771013, *6, 1999 Ohio App. LEXIS 4633, *21; *see also Erebia v. Chrysler Plastic Prods. Corp.,* 891 F.2d 1212, 1216 (6th Cir.1989) (plaintiff could not maintain claim for tortious interference with a business contract against fellow employee); *Gunthorpe v. Daimlerchrysler Corp.,* 205 F.Supp.2d 820, 826 (N.D.Ohio 2002) (same); *Condon,* 99 Ohio App.3d at 22, 649 N.E.2d 1259 (same); *Hill v. Gatz,* 63 Ohio App.2d 170, 175, 410 N.E.2d 1268 (1979) (same). Such claims by employees against officers or other supervisory agents of employers must fail because "there is no third party who induced the breach. The agents are considered the same as the actual employer." *Erebia,* 891 F.2d at 1216 (*quoting Avins v. Moll,* 610 F.Supp. 308, 318 (D.Pa.1984)); *see also Gunthorpe,* 205 F.Supp.2d at 826 (employee of a party to the contract or

expectancy at issue generally is not regarded as a third party); *Tessmer,* 1999 WL 771013, *6, 1999 Ohio App. LEXIS 4633, *21 (same); *Condon,* 99 Ohio App.3d at 22, 649 N.E.2d 1259 (same).

■ To maintain a tortious interference claim against an employee of a party to the relationship at issue, a plaintiff must demonstrate that the employee acted solely in his or her individual capacity and benefitted from the alleged interference. *Gunthorpe,* 205 F.Supp.2d at 826 (*citing Miller v. Wikel Mfg. Co.,* 46 Ohio St.3d 76, 78–79, 545 N.E.2d 76 (1989)) (applying this principle to tortious interference with business contract case); *Tessmer,* 1999 WL 771013, 1999 Ohio App. LEXIS 4633, at *21 (applying this principle to tortious interference with employment relationship case).

In this case, defendants Barker and McAbier were employees of Roadway Express, the party to the employment relationship with plaintiff. They are not third parties to the relationship between plaintiff and Roadway Express. Consequently, plaintiff cannot state a claim against them for tortious interference with his employment relationship, unless he alleges that they acted solely in their individual capacities. *Gunthorpe,* 205 F.Supp.2d at 826.

■ In his complaint, plaintiff alleges "[b]oth defendants, Barker and McAbier, were employees of defendant Roadway Express, Inc. at the time the false statements were made, and were acting within the scope of their duties." (Doc. 1 at ¶ 34). In his opposition to the defendants' motion to dismiss, plaintiff again acknowledges that defendants were acting within their official capacities as Roadway Express employees when they spoke at the grievance hearings. Plaintiff nonetheless alleges that defendants chose to defame him in their individual capacities. According to plaintiff's own complaint, however, defen-

dants were not acting *solely* in their individual capacities when they made the statements in the grievance hearings. Because this is a requirement for stating a tortious interference claim against another employee, *Gunthorpe*, 205 F.Supp.2d at 826, plaintiff's claim fails. Even if plaintiff had alleged that defendants acted solely in their individual capacities while speaking at his grievance hearings, plaintiff has not alleged that defendants personally benefitted from their alleged interference with the employment relationship between plaintiff and Roadway Express.

It appears beyond doubt from the complaint that plaintiff can prove no set of facts which would entitle him to relief on his claim for intentional interference with a business relationship, and the claim must be dismissed.

### III. Civil Conspiracy

Finally, plaintiff has asserted a claim of civil conspiracy, alleging that Barker and McAbier conspired to perform the acts forming the basis of plaintiff's substantive claims.

Civil conspiracy in Ohio is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995) (citations omitted). "[A] conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action." *Minarik v. Nagy*, 8 Ohio App.2d 194, 195, 193 N.E.2d 280 (1963). Without an underlying unlawful act, then, there can be no derivative civil conspiracy claim. *Id.* at 196, 193 N.E.2d 280.

In this case, plaintiff has not stated a claim for defamation, intentional infliction of emotional distress, or interference with an employment relationship. Consequently, he cannot maintain a civil conspiracy claim.

### Conclusion

Section 301 of the LMRA preempts plaintiff's claims for defamation and intentional infliction of emotional distress, because evaluation of the claims would require interpretation of the collective bargaining agreement. Plaintiff's claim for interference with an employment relationship fails because defendants were not third parties to the relationship and did not act solely in their individual capacities. Plaintiff's civil conspiracy claim fails because his substantive claims have failed.

It is, therefore

ORDERED THAT defendants' partial motion to dismiss be, and the same hereby is granted.

So ordered.